**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**RONNIE L. MILLER, 08-B-2469,**

                                        **Plaintiff,**

**v.**                                                          **11-CV-0617(Sr)**

**DR. JADOW RAO,**
**Attica Correctional Facility Health Services Director,**

**MS. KILLINGER,**
**Attica Correctional Facility Nurse Administrator,**
**and**

**MR. JAMES CONWAY,**
**Attica Correctional Facility Superintendent,**

                                        **Defendants.**

_____

### DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of

this case to the undersigned to conduct all proceedings, including the entry of final

judgment.  Dkt. #39.

        Plaintiff Ronnie Miller, an inmate in the care and custody of the New York State

Department of Corrections and Community Service ("DOCCS"), brings this action

pursuant to 42 U.S.C. § 1983 seeking money damages for violation of his rights under

the Eighth Amendment, based on alleged deliberate indifference to his serious medical

needs during a period of his incarceration at the Attica Correctional Facility ("Attica

CF"), and alleged retaliatory transfer for exercising his right to file an inmate grievance.

Pending for determination are the parties' respective motions for summary judgment

under Rule 56 of the Federal Rules of Civil Procedure.  Dkt. ##26, 33.  For the reasons

that follow, plaintiff's motion is denied, and defendants' motion is granted.

## BACKGROUND

The following factual and procedural background is derived from the pleadings,

declarations, exhibits, discovery materials, and other submissions on file (including the

parties' respective Statements of Facts on Motion for Summary Judgment (Dkt. ##27

and 41) submitted in accordance with Rule 56(a) of the Local Rules of Civil Procedure

for the Western District of New York).

Plaintiff was incarcerated at Attica CF from August 15, 2008 through June 9,

2009.  Dkt. #17, p. 13.  According to his inmate medical records, plaintiff was examined

by Physician Assistant ("PA") Deborah Graf on October 2, 2008, regarding his request

for orthotic footwear, which he had received on "previous bids."  Dkt. #46, p. 112.[1]

Upon noting plaintiff's history of lower back pain/sciatica, left hip degeneration, and right

knee reconstructive surgery "20 yrs. ago," PA Graf requested a further medical

consultation for orthotic footwear for plaintiff, entering the request on the Facility Health

Services ("FHS") computer system as an "initial referral" with a "routine" urgency level.

*Id.* at 112, 242; *see also* Dkt. #29 (Rao Decl.), ¶¶8-9.

Dr. Jadow Rao, M.D., Facility Health Service Director at Attica CF, reviewed PA

Graf's recommendation on October 2, 2008, and forwarded the recommendation to the

Regional Medical Director in Albany for decision.  Dkt. #29, ¶10.  On October 3, 2008

---

[1]Dkt. #46 is a certified copy of plaintiff's inmate medical records, Bates numbered from page 45 through page 356 (zeros omitted), submitted under seal as an exhibit to defendants' summary judgment motion, pursuant to the Court's Text Order dated 10/8/2013 (Dkt. #44).

the Regional Medical Director in Albany denied the request for an orthotics consultation, recommending instead that plaintiff be given insoles with arch support. Dkt. #46, p. 242. On October 6, 2008, the Review Committee upheld the Regional Medical Director's denial of the orthotics consultation request. Dkt. #29, ¶¶11-12; Dkt. #46, p. 242-43.

Plaintiff's Ambulatory Health Records ("AHR") reflect that on November 21, 2008, PA Graf saw plaintiff again and informed him that the request for an orthotics referral had been denied. Plaintiff then requested a prescription for knee and hip pain, and an "ACL knee brace." Dkt. #46, pp. 111. PA Graf prescribed a non-steroidal anti-inflammatory pain medication (Naprosyn), and entered a request on the FHS system for plaintiff to be referred to physical therapy for a knee brace evaluation. Dr. Rao approved the physical therapy referral, and plaintiff was seen by Physical Therapist ("PT") Danielle Jensen on December 8, 2008. During his visit with PT Jensen, plaintiff stated that "addressing his knee injury now is ridiculous." He refused pain medication, and reiterated his request for orthotics. PT Jensen indicated possible follow-up with physical therapy after receipt of the orthotics, if deemed medically appropriate. *Id.* at 111, 241; Dkt. #29, ¶¶15-17.

On December 29, 2008 plaintiff reported to sick call complaining that the pain in his left hip was making him put all of his weight on his right side, causing pain in his right knee. A request was entered on the FHS system for plaintiff to see his primary physician ("PRI") "soon." Dkt. #46, p. 111.

Plaintiff's AHR records further reflect that, on January 1, 2009, plaintiff complained to medical staff that the muscles of his lower back had "knotted up" while

he was walking to the mess hall. *Id.* He reported his medical history of lower back pain, knee pain, reconstructive knee surgery, and hip degeneration. He requested pain medication "stronger than ibuprofen [or] Naprosyn," and further stated that he had never taken pain medication while he was outside the correctional system. The entry reflects that plaintiff was able to walk without a limp to a wheelchair for return to his cell, and it was recommended that he receive meals in his cell for the next five days. *Id.*; Dkt. #29, ¶21.

On January 20, 2009, plaintiff filed Inmate Grievance Complaint No. A-54077-09, regarding the denial of a referral for orthotic footwear. *See* Dkt. #17, pp. 14-16. The Inmate Grievance Resolution Committee ("IRC") forwarded the complaint to Attica CF Nurse Administrator ("NA") Rosalyn Killinger for review. On January 26, 2009, NA Killinger responded that, based on her review of plaintiff's medical records, including the denial of an orthotics referral by both the Regional Medical Director and Review Committee in October 2008, it was her medical judgment that there was "no medical indication for orthotics" at that time, and that plaintiff "can ask for insoles with a cushion at sick call." *Id.* at 17. On January 30, 2009, the IGRC denied Grievance No. A-54077-09 based on NA Killinger's recommendation, and plaintiff did not appeal to the Superintendent within seven days, as required by DOCCS' grievance procedures. *Id.* at 11-12; *see also* Dkt. #30 (Killinger Decl.), ¶¶6-9; Dkt. #31(Conway Decl.), ¶6.

Meanwhile, plaintiff was seen by his primary physician, Dr. John Schwab, M.D., on January 27, 2009. Dr. Schwab noted that plaintiff "fell" on January 1, 2009, and reported plaintiff's complaints of moderate pain in his left hip and right knee, sciatica,

and denial of an orthotics consultation. He ordered x-rays, a Lennox ACL brace, and orthotic boots with insoles. Dkt. #46, p. 110. However, plaintiff's AHR progress notes and FHS referral history records reflect that the orthotics referral was not entered into the FHS system until plaintiff saw Dr. Schwab again on March 3, 2009. *Id.* at 109; Dkt. #25, pp. 4-5.

On February 6, 2009, plaintiff was seen at sick call complaining of a sore throat, increasing numbness and tingling in his left leg, and a sharp pain in his side, and a referral request was entered on the FHS system for plaintiff to be seen again by his primary doctor "soon." *Id*. at 109; Dkt. #25, p. 4. On February 20, 2009, plaintiff reported to sick call to check on his pending appointment for an orthotics fitting (as previously ordered by Dr. Schwab) and to address his complaints of numbness and tingling, whereupon medical staff noted that plaintiff was still waiting for referral to his primary "as per AHR entry 2/6/09." Dkt. #46, p. 109.

As indicated above, plaintiff was seen by Dr. Schwab on March 3, 2009, at which time Dr. Schwab's referral for orthotics was entered into the FHS system. The reason for the referral was stated on the FHS printout as follows:

> [Inmate] requires orthotic boot to take impact off left hip, due to right knee being fully reconstructed. Extra in[-]depth boot allows for molded insert so that weight can be distributed evenly in foot. Needs ankle support.

Dkt. #25, p. 5. However, on March 6, 2009, the Regional Medical Director and Review Committee once again denied the request for an orthotics referral, instead recommending "insole with arch support." *Id.*

Also on March 6, 2009, x-rays were taken of plaintiff's left hip and lumbar spine. The radiology report indicates no evidence of fracture, dislocation, or joint problems,

and the radiologist's impression was that both the lumbar spine and left hip were normal. Dkt. #46, p. 151. Dr. Schwab reviewed the x-ray results on March 19, 2009, and indicated that "no action is required at this time." *Id.*

On March 26, 2009, plaintiff sent an "Inter-Facility Communication" to Attica CF Superintendent James Conway regarding the IRGC's denial of Grievance No. A-54077-09, recounting the history of his attempts to obtain orthotics (including events occurring subsequent to the denial), and "respectfully requesting [Superintendent Conway's] attention to this matter." Dkt. #17, pp. 27-28. Plaintiff also wrote to the IGRC on March 30, 2009, to request a new hearing or an appeal of Grievance No. A-54077-09, explaining that he did not sign the form for appealing the denial because he believed at the time that his need for orthotics was being met. *Id.* at 22.

As a result of these communications, the IGRC initiated a new Grievance No. A-55088-09, dated April 2, 2009, which was again directed to NA Killinger for review. *See* Dkt. #30, ¶10; Dkt. #31, ¶8. On April 5, 2009, NA Killinger reported her conclusion to the IGRC that plaintiff's current medical condition, as reflected in his medical records—including the AHR progress notes, x-rays, radiology reports, and Regional Office denials generated subsequent to the original grievance—did not warrant a prescription for orthotic footwear. *See* Dkt. #30, ¶¶11-14. On April 10, 2009, the IGRC denied Grievance No. A-55088-09, based on NA Killinger's report. *See* Dkt. #17, p. 20.

Plaintiff appealed the IGRC's decision, and on April 24, 2009, Superintendent Conway denied the appeal, stating as follows:

> Grievance denied. Medical situations change over time. Simply because you were prescribed orthopedic boots on your previous bid does not necessarily mean you need them now. Health Services staff have

> indicated that you currently do not have any condition that requires that
> you be fitted for such footwear.

*Id.*; *see also id.* at 25.  Plaintiff appealed the Superintendent's decision to the Central

Office Review Committee ("CORC"), which affirmed the denial on June 10, 2009.  *Id.* at

18.

Meanwhile, plaintiff was seen by PA Graf at sick call on April 28, 2009, for follow-

up after the Superintendent's denial of his grievance.  Dkt. #46, p. 108.  PA Graf's AHR

entry for that date indicates that plaintiff was issued insoles with arch supports, and a

knee brace for his right knee.  *Id.*   Plaintiff was seen by PA Graf again on June 1, 2009,

at which time plaintiff reported that the insoles and knee brace were ineffective.  *Id.* at

107.  PA Graf indicated that she "will try again" (*id.*), and she entered another request

for a prescription footwear referral into the FHS system.  Dkt. #25, p. 4.

On June 9, 2009, plaintiff was transferred from Attica CF to the Clinton CF

Annex.  Dkt. #17, p. 13; Dkt. #29, ¶35.

Plaintiff commenced this action on July 21, 2011, against Dr. Rao, NA Killinger,

and Superintendent Conway.  He claims that Dr. Rao's denial of the recommendations

of Dr. Schwab and PA Graf for an orthotics referral as clearly established by the

medical records, and the denial of related grievances and appeals by NA Killinger and

Superintendent Conway, violated his constitutional right to adequate medical care as an

inmate in DOCCS' custody.  He also alleges that his transfer to the Clinton Annex on

June 9, 2009, was in retaliation for exercising his right to appeal to the CORC, and as a

means for defendants to evade their obligation to provide adequate medical care at

Attica CF.  He seeks $1.5 million in damages from each defendant, pursuant to 42 U.S.C. § 1983.  *See* Dkt. #1.

Both parties have moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons that follow, defendants' motion is granted, and plaintiff's motion is denied.

## **DISCUSSION**

**1.     Summary Judgment Standard**

Rule 56 provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged.  *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011).  Under these standards, the party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists.  *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, 445 F. App'x 387 (2d Cir. 2011).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law …."  *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a

genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed . . .." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted) (quoted in *Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011)). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

The Court recognizes its duty to "extend extra consideration" to *pro se* plaintiffs and that "*pro se* parties are to be given special latitude on summary judgment motions." *Bennett v. Goord*, 2006 WL 2794421, at *3 (W.D.N.Y. Aug. 1, 2006), *aff'd*, 2008 WL 5083122 (2d Cir. 2008) (quoting *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* party's pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest"). "Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, 1999 WL 983876, at *3 (S.D.N.Y. October 28, 1999) (citing cases).

In this case, defendants contend that plaintiff cannot establish the elements of either his deliberate indifference claim or his retaliation claim as a matter of law, and summary judgment should be therefore entered in defendants' favor dismissing the complaint. Defendants also seek dismissal of the deliberate indifference claim against defendant Conway for lack of personal involvement in the orthotics decision, and dismissal of the claims against all three defendants based on qualified immunity.

For his part, plaintiff contends that summary judgment should be granted in his favor because the medical records submitted to the Court clearly establish both the seriousness of his medical need for orthotic footwear and defendants' deliberate indifference to that need.

**2.      Deliberate Indifference to Medical Needs**

The Eighth Amendment's prohibition against cruel and unusual punishment has been construed by the courts to include denial of adequate medical care for an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir.), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1994); *Baskerville v. Tremlett*, 2013 WL 286362, at *4 (W.D.N.Y. Jan. 24, 2013). To show that prison medical treatment was so inadequate as to amount to an Eighth Amendment violation, the inmate must prove that the prison officials' actions or omissions amounted to "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

Analysis of a Section 1983 claim for deliberate indifference to a serious medical need involves a two-pronged inquiry consisting of objective and subjective elements.

First, the court must determine whether plaintiff's condition is such that the alleged

deprivation of medical assistance is, "in objective terms, 'sufficiently serious.' "

*Hathaway I*, 37 F.3d at 66–67 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Second, the court must consider whether prison officials " 'knew that an inmate faced a

substantial risk of serious harm, and disregarded that risk by failing to take reasonable

measures to abate it.' " *Baskerville*, 2013 WL 286362, at *5 (quoting *Woods v. Goord*,

2002 WL 31296325, *2 (S.D.N.Y. Oct. 10, 2002)).

　　　　As addressed in the case law, a "serious medical need" is one with some

urgency or one which, if ignored, may produce death, degeneration or extreme pain.

*Hathaway I,* 37 F.3d at 66.　There is no precise metric to guide the court in its

estimation of the seriousness of a prisoner's medical condition, *Brock v. Wright*, 315

F.3d 158, 162 (2d Cir. 2003), and inquiry into the objective component of an Eighth

Amendment claim must be tailored to the specific facts of each case.　*See Smith v.

Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).　The Second Circuit has set forth a

non-exhaustive list of factors to be considered when conducting this inquiry, including:

(1) whether a reasonable doctor or patient would perceive the medical need in question

as "important and worthy of comment or treatment;" (2) whether the medical condition

significantly affects daily activities; and (3) "the existence of chronic and substantial

pain."　*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

　　　　In this case, plaintiff alleges chronic pain resulting from a combination of

degenerative problems with his left hip and residual pain in his surgically reconstructed

right knee, aggravated due to the denial of previously-prescribed custom orthotic

footwear during the time of his incarceration at Attica CF.  Upon consideration of the present record in the light most favorable to plaintiff, including the AHR progress notes, FHS referral history, radiology reports, and other information regarding plaintiff's medical condition during the relevant period, the Court finds for the purposes of the present motion that plaintiff's medical need for orthotics correction was "sufficiently serious" to meet the objective component of his deliberate indifference claim.  *Cf. Davidson v. Scully*, 155 F. Supp. 2d 77, 82-83 (S.D.N.Y. 2001) (assuming for purposes of summary judgment that, "while 'the level of pain one person experiences is subjective," plaintiff's podiatric condition could constitute an objectively "serious medical need"); *Giambalvo v. Sommer*, 2012 WL 4471532, at *5 (S.D.N.Y. Sept. 19, 2012) (drawing all inferences in plaintiff's favor on motion to dismiss, plaintiff sufficiently alleged severe pain and difficulty walking without previously-prescribed medical shoes constituted serious medical need).

With regard to the subjective component, plaintiff must ultimately show that the prison officials charged with deliberate indifference were "actually aware of a substantial risk" that plaintiff would suffer serious harm as a result of their actions or inactions. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  Stated another way, plaintiff must show that the charged officials acted with a "sufficiently culpable state of mind." *Id.* (citing *Wilson*, 501 U.S. at 300).  " 'Deliberate indifference' describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the 'very purpose of causing harm or with knowledge that harm will

result.' " *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Farmer*, 511

U.S. at 835), *cert. denied*, 543 U.S. 1093 (2005).  Rather:

> The subjective element requires a state of mind that is the equivalent of criminal recklessness; namely, when the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*,

511 U.S. at 837).

Thus "negligence, even if it constitutes medical malpractice, does not, without

more, engender a constitutional claim."  *Chance*, 143 F.3d at 703.  Although certain

instances of medical malpractice may rise to the level of deliberate indifference (*i.e.*,

where the prison doctor's conduct evinces conscious disregard of a substantial risk of

serious harm), it is well-established that a prison inmate cannot establish a deliberate

indifference claim on the basis of "mere disagreement over the proper treatment ….  So

long as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation."  *Id.*

Applying these standards here, and drawing all reasonable inferences in

plaintiff's favor, the Court finds the evidence in the present record insufficient as a

matter of law to establish that any of the defendants named in this action acted with the

level of culpability necessary to impose liability for deliberate indifference to plaintiff's

serious medical needs under the Eighth Amendment and Section 1983.  First, contrary

to plaintiff's claim that defendant Rao consciously disregarded plaintiff's need for

orthotics, the record reflects that Dr. Rao, along with non-parties Dr. Schwab and PA

Graf, did in fact recommend that plaintiff be referred for an orthotics consultation. However, the recommendations were denied on two separate occasions by the Regional Medical Director and Review Committee in Albany. Both denials were accompanied by directions for alternative treatment consisting of insoles with arch support, and a knee brace.

Second, defendant Killinger's involvement in the alleged constitutional violation was limited to her review of plaintiff's medical information in response to an inquiry from the IGRC during its investigation of Grievances A-54077-09 and A-55088-09, acting in her capacity as Attica CF's Nurse Administrator. Based on these reviews, defendant Killinger concluded that plaintiff's health records provided no medical indication for orthotics, and she recommended the alternative treatment of insoles with cushions.

Furthermore, as set forth in the discussion above, the evidence in the record before the Court reflects that plaintiff received adequate treatment during the period of his incarceration at Attica CF in 2008-09. Plaintiff's medical condition was closely monitored through several sick call visits with PA Graf and other medical staff, as well as through appointments with his primary physician, Dr. Schwab. Plaintiff was regularly prescribed medication in response to his complaints of pain, and was referred for consultation with a physical therapist, but the report for the consultation reflects that plaintiff declined both physical therapy and pain medication because he felt that addressing his knee problem at that time was "ridiculous."

In addition, following the denials of Dr. Schwab's request for an orthotics referral at the Regional level, x-rays were taken of plaintiff's lumbar spine and left hip. Dr. C.J. Riggio, the reviewing radiologist, reported that the x-rays showed no evidence of

fracture, dislocation, or joint problems, leaving the impression that both the lumbar spine and left hip were normal. Dr. Schwab then reviewed the radiologist's report and indicated that no further action was required.

In light of this record of the medical treatment provided to plaintiff while he was housed at Attica CF, his claims of deliberate indifference to his medical needs can only be viewed as "mere disagreement with prison officials about what constitutes appropriate medical care[, which] does not state a cognizable claim under the Eighth Amendment." *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992). Indeed, it is well-established that "[a] difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." *Sonds v. St. Barnabas Hosp. Corr. Health Serv.*,151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Chance*, 143 F.3d at 703)); *see also McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) ( "[T]here is no right to the medical treatment of one's choice if the prescribed treatment is based on applicable medical standards."). "It is not the function of this Court to second-guess the good-faith medical judgment made by physicians or their staff concerning the treatment of inmates." *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990), *quoted in Gliatta v. Stein*, 2006 WL 2482019, at *6 (W.D.N.Y. Aug. 25, 2006); *cf. Garza v. Turley*, 490 F. App'x 83, 86 (10th Cir. 2012) (no deliberate indifference where medical staff repeatedly attended to inmate's foot problems and provided supportive footwear, though not custom made orthopedic footwear); *Davidson*, 155 F. Supp .2d 77, 82–84 (no deliberate indifference where inmate received extensive

treatment for his podiatric problems, but denied him particular type of orthopedic shoes).

Finally, the record reflects that defendant Conway's involvement in the alleged denial of adequate medical care was limited to his affirmation on appeal of the IGRC's denial of Grievance No. A-55088-09, acting in his capacity as the Superintendent of Attica CF. However, it is also well-settled that a prison superintendent's affirmance of the denial of an inmate's grievance, "which is all that is alleged against [defendant Conway]—is insufficient to establish personal involvement" for the purpose of imposing supervisory liability for deliberate indifference to the inmate's medical needs. *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002); *see also Watson v. Wright*, 2013 WL 1791079, at *8 (W.D.N.Y. Mar. 26, 2013) (citing cases), *adopted*, 2013 WL 1789578 (W.D.N.Y. Apr. 26, 2013).

Based on the foregoing analysis, and in the absence of any genuine dispute as to the material facts regarding the medical treatment provided to plaintiff during the period of his incarceration at Attica CF between August 2008 and June 2009, this Court concludes that no reasonable jury could find in plaintiff's favor on his claim that defendants Rao, Killinger, and Conway, or any of them, were deliberately indifferent to plaintiff's serious medical needs. Defendants are therefore entitled to summary judgment pursuant to Fed. R. Civ. P. 56 dismissing plaintiff's Eighth Amendment claim as a matter of law.

### 4. Retaliatory Transfer

Plaintiff also alleges that his transfer from Attica CF to the Clinton Annex on June 9, 2009 was arranged by defendants to retaliate against him for appealing Superintendent Conway's affirmance of the IGRC's denial of Grievance No. A-55088-09. To establish this claim as a cognizable basis for relief under Section 1983, plaintiff must demonstrate that (1) the conduct at issue was protected; (2) the defendants took adverse action against him; and (3) there was a causal connection between the protected activity and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). If plaintiff makes these showings, defendants may evade liability if they can demonstrate that they would have transferred him " 'even in the absence of the protected conduct.' " *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

In addition, the Second Circuit has on several occasions admonished the district courts to approach prison inmates' retaliation claims " 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)); *see also Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012). To succeed on this claim, plaintiff cannot simply rely on "wholly conclusory" allegations of retaliatory transfer, "but rather, must provide a pleading that is 'supported by specific and detailed factual

allegations.' " *Anderson v. Lapolt*, 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000)); *see also Sawyer v. Jowers*, 2008 WL 4791557, at *6 (N.D.Tex. Oct. 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from which retaliation may plausibly be inferred").

There is no genuine dispute in this case that the conduct at issue—filing inmate grievances to enforce the right to adequate medical care—constitutes constitutionally protected activity. *See, e.g., Graham*, 89 F.3d at 80 ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under §1983."). Plaintiff therefore meets the first prong of his burden to establish liability for retaliatory transfer.

At the second prong of the inquiry, plaintiff must show that his transfer from Attica CF to the Clinton Annex on June 9, 2009, resulted in adverse action. To do this, he must allege—and ultimately prove— that defendants subjected him to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes*, 239 F.3d at 493 ("Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation.... Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection.")). Stated another way, the alleged adverse action must be action "that

would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts." *Gill*, 389 F.3d at 384.

The Court's review of the present record reveals that plaintiff's status was reviewed in April 2009 by a transfer review committee at Attica CF consisting of an Inmate Counselor, a Senior Counselor, and the Deputy Superintendent of Programs, at which time plaintiff was determined to be eligible for "reduce[d] security" transfer for "program purposes." *See* Dkt. #23, p. 18. As a result, plaintiff was transferred in June 2009 from Attica CF—classified under DOCCS regulations as a "maximum security" facility (*see* 7 N.Y.C.R.R. § 100.5(c)), to the Clinton Annex—classified as a "Maximum 02" or "lower security compound" (*see* DOCCS Directive No. 0047 (Dkt. #43)). According to defendant Conway, as the result of this transfer plaintiff became eligible for "increased privileges" available at the Clinton Annex. *See* Dkt. #31, ¶13.

Federal courts have routinely held that transfer of an inmate from one correctional facility to another facility of the same security level, in the absence of any aggravating factors or circumstances evidencing some form of deterrent effect on the inmate, "cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases; citations and internal quotation marks omitted); *Friedmann v. Corrections Corp. of America*, 11 F. App'x 467, 471 (6th Cir. 2001); *see also Warren v. Goord*, 2006 WL 1582385, at *14-15 (W.D.N.Y. May 26, 2006) (dismissing retaliatory transfer claim; finding no adverse action where inmate failed to allege that conditions of his confinement upon transfer from Wende

CF's long-term care medical unit to Attica CF's infirmary "significantly differed"), *aff'd*, 2008 WL 5077004 (2d Cir. 2008), *cert. denied*, 558 U.S. 1100 (2009).  The Court has found no cases, and none have been cited, holding that a transfer from one correctional facility to another for program purposes which resulted in reduced security confinement and increased inmate privileges, unaccompanied by circumstances indicating deterrence, could be considered an adverse action for the purpose of imposing Section 1983 liability for retaliatory transfer in violation of the First and Fourteenth Amendments.

In this case, the record on summary judgment reveals no facts from which it could be inferred that prison officials' conduct in effecting plaintiff's June 9, 2009 transfer from maximum security confinement in the general population at Attica CF to the reduced security and increased privileges available in the general population at the Clinton Annex was accompanied by any aggravating factors or other circumstances to suggest that the transfer resulted in an adverse action that would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the inmate grievance process.  Based on this record, no reasonable juror could find that plaintiff can establish the elements necessary to impose Section 1983 liability for retaliatory transfer upon any of the defendants named in the complaint.

Accordingly, defendants are entitled to summary judgment dismissing this claim as a matter of law.[2]

---

[2]Because the Court has found that plaintiff cannot establish the elements of his deliberate indifference and retaliation claims, the Court declines to address defendants' claim of entitlement to qualified immunity.

## CONCLUSION

Based on the foregoing, and for the reasons stated, defendants' motion for summary judgment (Dkt. #26) is granted, plaintiff's motion for summary judgment (Dkt. #33) is denied, and the complaint in this action is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment in favor of defendants, pursuant to Fed. R. Civ. P. 58.

**SO ORDERED.**

DATED:      Buffalo, New York
             December 3, 2013

    **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**